AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Oregon

| | |
|---|---|
| United States of America<br>v.<br>GEORGE DOUMAR<br><br>*Defendant(s)* | Case No.<br>1:20-mj- 00200 -CL |

## CRIMINAL COMPLAINT
### BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __April, 1971 to present__ in the county of __Klamath__ in the _____ District of __Oregon__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 641 | Theft of Public Funds |
| 18 U.S.C. § 1708 | Mail Theft |

This criminal complaint is based on these facts:

See the attached affidavit of Senior Special Agent Scott Jones, Social Security Administration-OIG

☑ Continued on the attached sheet.

S/Scott Jones
*Complainant's signature*

SSA-OIG SA Scott Jones
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at __9__ a.m./p.m.

Date: __8/11/20__

City and state: __Medford, Oregon__       Honorable Mark D. Clarke, U.S. Magistrate Judge
*Printed name and title*

DISTRICT OF OREGON, ss:        AFFIDAVIT OF SCOTT JONES

**Affidavit in Support of a Criminal Complaint and Summons**

I, Scott Jones, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1. I am a Special Agent with the Social Security Administration's ("SSA") Office of the Inspector General ("SSA-OIG") and have been since 2014. I am presently assigned to the Salem, Oregon ("OR") Field Office. I am a graduate of the Criminal Investigator Training Program and Inspector General Investigator Training Program at the Federal Law Enforcement Training Center, and I have received regular training in the enforcement of United States law, including the preparation, presentation, and service of criminal complaints and both arrest and search warrants. As an SSA-OIG Special Agent, my duties include investigating fraud, waste, and abuse related to SSA and its programs. During my tenure as a Special Agent, I have conducted numerous investigations of criminal activity including identity theft, government benefit fraud, wire fraud, bank fraud, mail theft, and other related crimes.

2. I submit this affidavit in support of a criminal complaint and summons for GEORGE WILLIAM DOUMAR. As set forth below, there is probable cause to believe, and I do believe, that GEORGE WILLIAM DOUMAR committed Theft of Public Funds in violation of Title 18 U.S.C. § 641 and Mail Theft in violation of Title 18 U.S.C. § 1708.

3. The information contained in this affidavit is based on my own personal knowledge and observations, as well as information conveyed to me by other law enforcement officers; my review of documents and records related to this investigation; and information gained through my training and experience. Because this affidavit is submitted for the limited

purpose of establishing probable cause, it does not set forth every fact that I, or others, have learned during the course of this investigation.

## Applicable Law

4. Title 18 U.S.C. § 641 provides that "[w]hoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof," shall be fined under this title or imprisoned not more than ten (10) years, or both, if the sum of the theft exceeds $1,000.

5. Title 18 U.S.C. § 1708 provides that "[w]hoever steals, takes, or abstracts, or by fraud or deception obtains, or attempts so to obtain, from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, any letter, postal card, package, bag, or mail, or abstracts or removes from any such letter, package, bag, or mail, any article or thing contained therein, or secretes, embezzles, or destroys any such letter, postal card, package, bag, or mail, or any article or thing contained therein," shall be fined under this title or imprisoned not more than five (5) years, or both.

## Statement of Probable Cause

6. In February 2020, SSA's Office of Anti-Fraud Programs identified a 114-year-old supercentenarian and retirement beneficiary, Adult Victim ("AV"), who appeared to be the second-oldest living person known in the United States to receive Social Security retirement benefits. SSA systems indicated that no updates occurred to AV's benefit record in over 30

years, and SSA staff were concerned she could be deceased. Due to potential fraud, this matter was referred to SSA-OIG for investigation.

7. According to SSA records, AV was born on August 7, 1905, in New York City, New York. In June 1970, AV applied for SSA Title II Retirement Insurance Benefits ("retirement benefits") in Brooklyn, New York, and indicated she wished to receive benefits beginning in August 1970.

8. According to SSA's Office of Anti-Fraud Programs and payment records, AV's Social Security retirement benefits were not issued between August 1970 to July 1977 due to AV's wages in 1970 that made her ineligible for retirement benefit payments at the time. In August 1977, AV obtained benefit eligibility after she reached her Delayed Retirement Computation ("DRC") year, which appears to have resulted in SSA initiating retirement benefits to AV using her initial 1970 benefit application. The first retirement check for AV was issued in September 1977.

9. SSA systems and the United States Department of Treasury ("Treasury") records show that, beginning in 1977 and continuing through present day, AV was issued monthly Social Security retirement benefits in the form of paper checks disbursed by the Treasury. Based on my training and experience, Treasury checks are disbursed through the United States Postal Service ("USPS").

10. According to SSA systems, on July 31, 1989, AV's address was updated to 3939 S. 6th St. Apt. 128, Klamath Falls, OR. There have been no other address or contact information updates made to AV's SSA record since this 1989 update.

11. A public internet search for AV's reported address, 3939 S. 6th St. Apt. 128, Klamath Falls, OR, revealed the address belonged to Frontier Parcel & Fax Service ("Frontier

Parcel"). According to the United States Postal Inspection Service ("USPIS"), Frontier Parcel operates as a Commercial Mail Receiving Agency ("CMRA"), which is a private business that accepts mail from the USPS on behalf of third parties. An image of the building, obtained from Google Street View, showed the building did not appear to contain apartment units. Based on this information, it appeared the "Apt 128" listed on the address was likely a mailbox at Frontier Parcel and not the actual residence for AV.

12. On March 19, 2020, I separately interviewed two of AV's nieces. After identifying myself and the nature of the investigation, both of AV's nieces told me that AV died in the 1960s/1970s and recalled attending her funeral in Brooklyn, New York, where she had reportedly lived her entire life. According to one niece, AV did not have any children and was not married, but she recalled AV's nephew, GEORGE WILLIAM DOUMAR ("DOUMAR"), was close with AV at the time of her death. The niece recalled that DOUMAR attended AV's funeral and was named sole beneficiary for the life insurance payout.

13. I then queried SSA systems and noted DOUMAR was a 76-year-old male who actively received Social Security retirement benefits at address 3939 S. 6th St., Klamath Falls, OR, which is the business location of Frontier Parcel and the same location where AV's retirement benefit checks were mailed. State of Oregon Employment Department records show DOUMAR is the current owner of Frontier Parcel, which was established in 1990.

14. According to Accurint, a LexisNexis database that contains property records, DOUMAR purchased the Frontier Parcel property located at 3939 S. 6th St., Klamath Falls, OR,, on or about March 1, 1989, and then purchased, with his wife, his current residence of 16470 Hillcrest Rd., Klamath Falls, OR, on or about September 1, 1989.

15. According to SSA records, seven (7) days after the purchase of the Frontier Parcel property, on September 8, 1989, AV's address was updated with SSA to reflect the 3939 S. 6th St. Apt. 128, Klamath Falls, OR, address located at Frontier Parcel.

16. On March 26, 2020, USPIS contacted the USPS office in Klamath Falls, OR, and inquired for any information on box #128 at Frontier Parcel. The USPS office was unable to locate any records for box #128 at Frontier Parcel and could not locate a PS Form-1583, Application for Delivery of Mail Through Agent, for box #128 which is a form used by the USPS to authorize the delivery of mail to the recipient through a CMRA. After being unable to locate any records, a USPS employee then went to Frontier Parcel and spoke to a long-time employee, later identified as DOUMAR's daughter. The USPS employee inquired about records for box #128, and after reviewing her records, DOUMAR's daughter stated box 128 had not been in use since 2007.

17. On April 1, 2020, USPIS Postal Inspector Shane Winder obtained the most recent CMRA Quarterly Report for Frontier Parcel, which showed the names of all current box owners. The list did not contain anyone with either the first or the last name of AV. Postal Inspector Winder learned from USPS staff at the Klamath Falls, OR. post office that mail is delivered to a CMRA in a single drop by the carrier, and is not presorted prior to delivery. Once delivered, CMRA employees, i.e. Frontier Parcel staff, sort the mail and place items in the box numbers. Additionally, if a letter or parcel arrived at a CMRA for a box that was not active, these would normally be held until the end of the week, then returned to the carrier for a return to sender.

18. On or about May 1, 2020, an Economic Impact Payment ("EIP") of $1,200 was issued to AV by the Treasury, as authorized by the Coronavirus Aid, Relief, and Economic

Security Act ("CARES Act"). On May 14, 2020, the check was deposited at US Bank. The check's reverse image shows it was endorsed with AV's purported signature:



19. On June 16, 2020, I obtained AV's death certificate from the New York City Department of Health & Mental Hygiene, which confirmed she died on March 7, 1971, in Brooklyn, New York.

20. According to the Social Security Act, as amended, Title II Section 202 provides that retirement benefit payments cease for individuals upon their death.

21. I have reviewed historical payment records provided by the Treasury's Bureau of Fiscal Service, covering the period of October 1997 (oldest date available) through July 2020,

which consisted of data and check images for AV's Social Security retirement benefits. During the review, I noted all of the reconciled checks appear to have been negotiated at US Bank and that AV's purported signature appears on the reverse of all the checks as an endorsement.

22. According to US Bank records, since at least April 2013, AV's monthly retirement checks were deposited into a US Bank checking account ending in 0920. The account holders are DOUMAR, his wife, and AV. The account was opened in February 1989 by DOUMAR and his wife. On August 31, 1989, AV was added to the bank account and the account signature card shows her purported signature:



23. US Bank records for checking account ending in 0920 show AV's retirement checks were occasionally bundled in the same deposit slip with other checks made payable to DOUMAR. Additionally, Social Security retirement payments for DOUMAR and his wife were electronically deposited into the same account. The bank account appears to have been primarily used to make

payments towards a home mortgage, car loans, health care companies, TV/internet, utilities, etc. Further, several paper checks are written out of the account and DOUMAR appears to be the primary signer on the account. As of March 2020, the account held a balance.

24. I have reviewed US Bank surveillance footage from February 11, 2020, which shows AV's retirement check for January 2020 was negotiated at the US Bank branch located at 3720 S. 6th St., Klamath Falls, OR and deposited into DOUMAR's checking account. The surveillance footage shows an older white male, who appears to match DOUMAR's general physical description, depositing the check:



25. On July 14, 2020, DOUMAR was interviewed at his residence in Klamath Falls, OR, by federal agents from SSA-OIG and USPIS. During the interview, DOUMAR confirmed he was the owner of Frontier Parcel and denied knowledge about box #128. When asked about AV, DOUMAR responded she was his aunt, then sighed, slumped his head, and stated, "that's a long story... what happened was, well she's passed [away] and yes, I've been collecting her Social Security."

Page 8 – Affidavit of Scott Jones                              USAO Version Rev. April 2018

26. DOUMAR explained that AV lived in a Brooklyn, New York, nursing facility from approximately 1969 until her death in 1971 and trusted him to manage her finances while she was at the facility. DOUMAR also lived in Brooklyn, New York, at the time. DOUMAR recalled AV's retirement checks were initially mailed directly to the nursing facility and did not recall how he eventually obtained regular possession of the checks after her death. DOUMAR stated that after he cashed the first few checks, he called SSA and reported AV was deceased[1]. DOUMAR stated that after this call to SSA, the checks stopped for several years, however, by approximately the mid/late 1970s, AV's checks started being mailed to him again and he continued to cash them through present day.

27. DOUMAR stated that in 1989 he moved from New York to Klamath Falls, OR, and admitted he forged AV's signature to add her onto his US Bank account in 1989. DOUMAR then began depositing AV's retirement checks into the US Bank account. Prior to 1989, DOUMAR recalled he used to cash AV's checks through a New York business he owned.

28. DOUMAR stated that several years ago he instructed his daughter, who primarily runs Frontier Parcel, to set aside all mail the business received for AV into a separate drawer so that DOUMAR could collect it later. DOUMAR stated the only mail sent for AV was her retirement checks or annual statements from SSA. DOUMAR maintained he never told his daughter, nor did they ever discuss, what was inside the envelopes or why he wanted AV's mail set aside.

29. DOUMAR was shown a photo of the US Bank surveillance footage from February 11, 2020, that showed the deposit of AV's January 2020 Social Security retirement check. DOUMAR confirmed he is the individual observed conducting the deposit. Additionally,

---

[1] According to SSA records, there is no indication AV's death was ever reported to SSA or entered in its systems.

Page 9 – Affidavit of Scott Jones                     USAO Version Rev. April 2018

DOUMAR was shown an image of AV's May 2020 CARES Act EIP check in the amount of $1200.00, and he admitted he forged AV's signature on the reverse and deposited the EIP check into his bank account.

30. DOUMAR stated he was the only individual to have ever deposited AV's checks or forged her signature. DOUMAR advised he never wanted AV's retirement checks to start with, but acknowledged what he did was wrong. DOUMAR estimated he has stolen between $400,000 to $500,000 in AV's benefit checks since the 1970s and that, while he did not need the checks, it was nice to have the extra money coming in every month. DOUMAR stated there were times over the years when he would temporarily stop cashing the checks, but then realized that if he stopped, then he would be caught, so he continued cashing them. DOUMAR acknowledged he took advantages of failures in the SSA system and stated he is ashamed of his actions.

31. According to the SSA Payment Center in Jamaica, New York, and historical payment records, from on or about September 2, 1977, to on or about July 2, 2020, Social Security retirement checks for AV were issued on a monthly basis and reconciled[2] after her death, when no benefits were due, resulting in a financial loss of $458,992.30. Additionally, AV's May 2020 EIP check for $1,200 is considered a financial loss to the Internal Revenue Service ("IRS"). As a result, the IRS and SSA suffered a total financial loss of $460,192.30.

///

///

///

///

///

---

[2] Seven (7) Social Security retirement checks for AV were issued, but never reconciled, for the period of December 2010 through June 2011, which reduced the total loss by $8,512.

Page 10 – Affidavit of Scott Jones                     USAO Version Rev. April 2018

## Conclusion

32. Based on the foregoing, I have probable cause to believe, and I do believe, that GEORGE WILLIAM DOUMAR committed Theft of Public Funds in violation of Title 18 U.S.C. § 641 and Mail Theft in violation of Title 18 U.S.C. § 1708. I therefore request that the Court issue a criminal complaint and summons for GEORGE WILLIAM DOUMAR.

33. Prior to being submitted to the Court, this affidavit, the accompanying complaint and the summons were all reviewed by Special Assistant United States Attorney ("SAUSA") Rachel K. Sowray, and SAUSA Sowray advised me that in her opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and summons.

S/ Scott Jones

SCOTT JONES
Special Agent, SSA-OIG

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 9 a.m./p.m. on 8/11/20.

HONORABLE MARK D. CLARKE
United States Magistrate Judge